In the morning and may it please the court, Brian Christensen for the appellant J.T. I'd like to reserve four minutes for rebuttal. Over the course of her kindergarten year, M.L. suffered some of the most unimaginable horrors a child could suffer, being sexually abused by her teacher on what she estimated was a hundred days out of a school year. But that was not all. After receiving a student's report of abuse, Uplift's investigation was so shoddy that it left M.L. to suffer with the effects of that abuse, including herpes, for an entire year until she told her mother. Why didn't she tell them when they interviewed her at that time? One of the most important facts of this case is that it involves kindergartners. Kindergarteners cannot communicate very well or understand sexual experiences as the law has. But she said she really liked him. So certainly here we're on summary judgment. We, J.T. and M.L., are entitled to have every factual inference construed in their favor. Well, I'm well aware of that. I'm just asking. She said Wayzid was a great teacher and all of that kind of stuff. So how would that have put Uplift on the knowledge that they needed to do more investigation than they did at that time? Well, let's start with the original report that Uplift received, which is that a student said that she was kissed all the time when we were good and that Mr. Wayzid kissed her on her neck. So we have this information that's very concerning in and of itself. Then they interview a total of five students, the original complaining students, three girls and one boy. Every single girl confirmed that Mr. Wayzid kissed her or hugged her or cuddled her while the boy said that Mr. Wayzid didn't know such a thing to the boys. So with this highly concerning information, the administrators at Uplift, Director Frazier, Deans Cooper, Dean Martinez, with a counselor, they undertook a process that intentionally sought not to find out evidence of sexual abuse, which was the entire nature of the complaint. If you look at the investigation they did, they interviewed these four students. It took no longer than 40 minutes total. Some interviews were less than five minutes. Inexplicably missing from the content of their interviews was any question about sexual contact or genital contact. It appears that they discovered, based on the girls' complaints, highly egregious information, but then were determined to do a cursory investigation, check boxes, and then they quietly terminated Mr. Wayzid. But Uplift deliberately hid everything about its investigation. Mr. Wayzid's conduct and his termination from every other parent because no parents knew anything. It is no wonder that no student disclosed the abuse until ML did a year later. So Uplift deliberately hid its investigation and its result from every other parent. Then Uplift lied about its investigation to CPS. To CPS, it reported one thing, that Mr. Wayzid, quote, kissed a student. When at the time it made that report, Uplift knew that he had kissed three students and had also, and then one of them, all the time and quite invasively on her neck. And that he cuddled and hugged other students. So Uplift lied about the nature and extent of Mr. Wayzid's abuse to CPS. So unsurprisingly, CPS rapidly screened and closed the matter. Uplift then made no report to law enforcement, which in turn received incomplete information from CPS based on Uplift's incomplete report. Then, after Mr. Wayzid's termination, and after Uplift's report to CPS, the complaining mother sent an additional email that included more incriminating information. Mr. Wayzid would have little girls frequently sit on his lap. And yet, with that information, Uplift did nothing. It didn't investigate further, ask more questions, tell parents, report additional information to CPS, or report that information to law enforcement. With these facts, a reasonable jury could conclude that this investigation alone demonstrates deliberate indifference. They could find that that investigation was pretextual, knowingly ineffective. And so, the fact that they lied, they hid this information, that's the deliberate element to this. And everything they did, including firing Mr. Wayzid, was solely to help the school, not to help to remedy the violations that had occurred of these girls and her classmates. Make sure I understand the facts of this case. After this investigation that you find flawed, the teacher ultimately was terminated and had no further contact with these students, is that correct? That's correct, Your Honor. So what you're really arguing is a better investigation, getting to the bottom of what really was going on, would have done what in support of your client's claims of concern? Well, a better investigation, first of all, would have done a great deal to remedy the effects of the abuse. Well, remedy whatever trauma that these girls and other kids had, in so far as remedying getting this teacher away from the students, that was remedied already, correct? That's correct. And so the students- What was the harm, and I expect you can see, I can identify, but I want you to articulate for me, what part of your claim is based on the fact that they didn't do a better job of investigating this teacher immediately? Well, for example, under Roe versus Cypress Fairbanks, an inadequate investigation in and of itself can demonstrate deliberate indifference. When the investigation is- Working backwards, they were deliberately indifferent at the time of the investigation. That therefore means they're as evident as they were deliberately indifferent earlier, when this was going on? I don't know. Well, so the deliberate indifference of the administrators in conducting the investigation shows that they were, that they had a- The moment they received the initial report from the first student, it is undisputed that they had actual knowledge of a substantial risk of sexual abuse. Then the next question becomes, were they deliberately indifferent to that, to the knowledge of that substantial risk? And the answer is yes, and that's reflected in their- But what I'm saying is the risk did end up not continuing, even though the investigation was flawed. You know, correct. They did terminate the teacher, but the effects of the abuse, including physical effects, those continued. And because they did not report any- I'm not sure that's all that you're saying. I don't know if you're trying to work backwards from the deliberate indifference, back into the time that he was actually there, or are you just saying that the post-traumatic stress syndrome and whatever else, problems that I think were identified in the brief, could have been dealt with earlier? Is that where you are? Yes, Your Honor, that's right. That's right, ML had to suffer with not only the physical effects of the abuse, which included oral herpes simplex, but also post-traumatic disorder. She had a change of personality, failing grades, needed to change schools. All of those things would have been rapidly remedied had they reported this information to even the parents of these students. But they did not. And that alone constitutes, or a jury could find, deliberate indifference. And then the district court also erred in holding that Uplift was entitled- Does deliberate indifference have to have caused additional harm to these kids? It seems to me it's, I mean, their liability for what happened while he was there may be limited to how much they were on notice of anything occurring while he was there. So it seems to me any liability for what happens after a bad investigation has to have a different basis, unless you tie it to liability while he was there. Well, Your Honor- So what is your best authority that not discovering, ending the harm, ending the relationship with this molester, with the school, ending that relationship, still allows your deliberate indifference claim? And I think to do that, you would have to show damages arose from that by itself. Your Honor, I would point to three authorities. First is the text of section 1681A itself, which provides that no person shall suffer on the basis of sex to be denied the benefits of education or to suffer discrimination from an educational program. So here, compared to her male peers, ML continues to suffer discrimination and to be denied the benefits of education relative to her peers. Second, if you look at the Supreme Court's decision in Gebser, Gebser analogized deliberate indifference to the regulatory scheme, which said a school may need to take action to remedy or to overcome the effects of discrimination. And we find support for that in this court's decision in Roe versus Cypress-Fairbanks, where the court said that part of why the school's response was deliberately indifferent was, quote, it gave her neither academic nor other appropriate support in the wake of her sexual assault. So some of the effects of the discrimination, even when the source of this discrimination has been removed, are still the responsibility of a school district. And I would say that that's especially true here when you have the most vulnerable people in our societies. To our knowledge, this case of a kindergartner is the youngest victim of a Fifth Circuit Title IX case of which we are aware. And if we then look at the information that the school had before receiving this report of abuse from the first complaining student, the district court also erred in holding the uplift was entitled to summary judgment on JT's Title IX claim about the evidence before getting this report. First, there was a direct witness of the abuse, ML herself, who was five and six years old during this time, reported that a teacher aide, Jasmine Walker, walked in and saw Mr. Waz, quote, as he was going down on me. Ms. Walker denied having seen that abuse, but stated that if she had, she would have reported it to uplift administrators. A jury could find, based on ML's testimony, that Ms. Walker did in fact see her. And then based in part on Ms. Walker's testimony, that she did in fact report this to uplift administrators. So we have direct evidence, a direct witness of this abuse that was reported to uplift administrators. Then there were other direct witnesses of the abuse. The abuser, Mr. Wazed, who is serving a seven year prison sentence, testified that uplift employees noticed, and officials noticed, when this barrier in his classroom was up and when these things were going on behind his desk. And so the uplift, and yet, even though they noticed, and my friends from uplift have argued that the fact that the director Fraser's classroom was 100 feet down the hall, and that they would patrol the hallways at least 80% of the time, she says, could not link that actual administrators saw these things going on behind the desk. Well, Director Frazier and the other deans frequently walked these halls with the specific purpose of looking for red flags for abusive behavior, abusive structures. And that leads to this circumstantial evidence of abuse, where you have a two foot by three foot wall of contiguous folders that were set up on this teacher's desk. And then he would turn off the lights in the classroom and lead girls back to this desk, and then commit these atrocities on these children. Now, very key to this is NL's own testimony, that this abuse happened 100 days out of a 180 day school year. That's more than 55%. So more likely than not, on a given day, Mr. Wazir was turning off these lights in the late afternoon and setting up this structure and committing these acts of abuse on children. Looking at all of this evidence, a jury could conclude that uplift officials had actual knowledge of abuse. And that the school is undisputed that the school district did nothing at all until it received the report from the initial student. So a jury could reasonably believe that they had actual knowledge of this abuse, but yet they did nothing. And then once they received the report, their response was completely inadequate. And so- It's insufficient that the appropriate person, it's insufficient that such a person should have known. As I understand your argument, there's circumstantial evidence, but isn't that all it is? Not that circumstantial evidence wins cases, but isn't it just circumstantial evidence based on walking the hallways, based on the darkness in the room and these barriers? You're saying there's circumstantial evidence that surely a jury could accept that an appropriate person would have walked by sometime during these 100 days that this happened. And seen this and been on notice of what? Well- If you agree with my premise, first tell me if you agree with my premise. So what would this appropriate person have been on notice of? First, yes, your honor, we agree with your premise that based on the circumstantial evidence here, which is substantial, that a jury could find there was actual knowledge. So of actual sexual abuse or a substantial risk of that abuse. So- Most would be of a substantial risk, so you say this one teacher came in, maybe that's what you're relying on, of actual knowledge. Anyway, keep going. So we have first the Ms. Walker, a teacher aide, ML said that the teacher aide saw her. Ms. Walker said, I didn't, but if I did, I would have told administrative officials. Under this court's precedence, a jury can believe all, some, or part of a testimony. And so they could believe that she did, in fact, report this to an administrator. Second, Mr. Wazed, the abuser, said that administrators would absolutely have seen. I refer to the court to the citations on page 43 of our opening brief, which show that Mr. Wazed's testimony that officials did see these things going on behind the desk, did see this unusual structure. Those are sufficient from which a jury could conclude that they, in fact, did see them. So it's not should have known, but under the summary judgment standard, did know. And I will save the rest for rebuttal. Thank you. May it please the court. I'm Catherine Long on behalf of Uplift Education. Jamil Wazed committed contemptible and heinous criminal acts against ML, and he is in jail for those actions. But the two claims that we're dealing with, Title IX is spending clause legislation that has very limited liability and requires actual notice and deliberate indifference. And the appellant's arguments water down and dilute the actual notice standard and also the deliberate indifference standard, and are not supported by any Fifth Circuit authority or Supreme Court authority, in effect, counter to that. And with respect to section 1983, which they didn't discuss, they failed to plead it in the trial court. But beyond that, their arguments really do not meet the requisite degree of culpability and causation necessary to ensure an absence of policy claim doesn't just dilute Monell and turn into a claim of respondeat superior. Why didn't they, when they learned of the problem with the prior other person, why didn't they talk to the parents of people like ML's parent? The testimony in the record is that it was an oversight, that they should have. Sharmonda Frazier, who's the director, the principal, acknowledged that she was concerned the complainant's parent is the one who complained. And so she contacted the complainant after the investigation was done. It is Uplift's practice that all parents should have been called. The director was focused on the parent who was the complainant themselves. And at most, it was negligent. And we admit it should have been done. All parents should have been called after that investigation. And Uplift Central Administration thought that they had been. But at most, it was negligence, not deliberate indifference under the standards for Title IX. If ML had said she was kissed and it really upset her and she's feeling bad, didn't mention the oral sex, but mentioned that, would that have changed anything that Uplift would have done? Would they have helped her? The counselor, Catherine Savoy, was in the investigation. And Catherine Savoy even talked about how she didn't see anything that required that they were going to need any counseling or anything like that, because they did include the counselor. And definitely, if an elementary student expresses something, that something wrong had happened, or they were having the counselor would be there to provide supports. But the counselor didn't see anything based upon that investigation that required her to receive anything further at that time. And I think it's important to note what the reports were, because I don't think that what you heard was exactly accurate. The first report that came in in the email is that a mother was saying that her daughter was concerned about starting first grade. And not having Mr. Waz-Ed as a teacher, because she liked Mr. Waz-Ed so much. And then in the context of that, she said that the little girl said that he would kiss her on the neck to reward them when they did something good. And that triggered the investigation. And in the investigation, what they learned is from ML was Mr. Waz-Ed was her favorite teacher. She kissed her on the cheek. Another young girl said he kissed her on the, and ML said she kissed me on the cheek, but not the neck. Indicating it was just a peck on the cheek. And the other girl who indicated that there was kissing, he kissed me on the forehead like he kissed me on the brain. This is not something indicative that there is a greater problem there. In fact, this case is unique because normally Title IX cases that this Fifth Circuit and Circuit Courts of Appeals happen is when the school district receives a report like they did on August 5th, and they don't terminate. They engage in some other action, and then later that educator harasses someone. And they said, well, you should have known based upon that original report. That's why this case is so different. And there's no case law that supports the pre-report conditions of the classroom are sufficient to show actual knowledge. Or to show that once they terminated the teacher, that anything after that was deliberate indifference. Counsel, let me ask a follow up on my question of your opponent. Let's say, hypothetically, that we agree that they did not provide evidence to support liability while this was going on. That the appropriate person was not on notice, issue of circumstantial evidence, doesn't convince us. So no liability for the initial piece, the teacher is fired. If we agree, though, with the plaintiffs that it was an inadequate investigation, deliberate indifference, not pursuing, not mere negligence in failing to talk to parents, but deliberate indifference. You can tell me later if you want to as to why it wasn't deliberate indifference, but you perhaps already have. Is that in and of itself enough then to create liability for under Title IX for continuing harm to these children? No, and the court need look no further than Gebser, Davis, and Rosa H to answer that question. Because in Gebser, the Supreme Court looked specifically because they were trying to define the actual knowledge standard and they compared and contrasted Title VII and Title IX. And Title VII is supposed to remedy the effects of past discrimination and make a party whole. But in contrast to Title VII, Title IX is there to protect students from discrimination in education programs and activities. And so when Gebser talks about remedying the violation, it's not talking about making someone whole or remedying the effects on that person. It's talking about remedying the discrimination in its education programs and activities. And so once the educator is terminated, as long as there are no other discrimination in their education programs or activities. And I can tell you there could be a situation that it continues even after termination. But that's more about the actual education programs and activities. And- The harm that they're talking about is PTSD and whatever similar effects poor children have when they've been subjected to things like this. And they're saying that's a continuing Title IX violation, or maybe not continuing, it in of itself is a Title IX violation that these girls, who were the only ones he molested, were suffering this. And you're, again, hypothetically, your inadequate investigation failed to uncover that. So it is a new harm, potentially, resulting from the investigation. The harm, and I apologize if I'm not answering your question, but the harm does not create Title IX. The harm doesn't create Title IX liability or damages. In fact, in Rosa H, the circuit said that if the harassment has already ended by the time an appropriate official is aware of it, then the school is not liable for a supervisor's later failure to engage in remedial actions or remedial things. And specifically, what concerns me is, how can you be deliberately indifferent for these psychological effects when the Supreme Court in Cummings versus Premier Rehab, specifically said that spending clause legislation doesn't put you on notice of the potential for- Sorry. So beyond Rosa H saying it forecloses it, I don't know how- I think your friend on the other side spoke about more than emotional damages. He said that there was some sexual transmitted disease impact from the failure to recover it early as well. So it's more than just physical or emotional. I mean, more than emotional. I've never heard before, seen any evidence in the record, that the herpes, the physical damage, was related to the lack of notice or timely notice. So, and I think on the deliberate indifference standard, what Uplift did is the minute they received any knowledge by an appropriate official, that there had been any inappropriate conduct, they immediately began an investigation. They used four administrators, three administrators and a counselor to conduct the investigation. They didn't just interview the complainant and her daughter, or the daughter and the mother. They selected four other students from Mr. Wazad's classroom based upon their verbal skills. And they prepared an investigation report. Unlike Roe, they wrote their notes of Roe versus Cypress Fairbanks ISD. They wrote their notes of all the student's statements. They prepared a complete investigation report. The draft went to central administrators who reviewed it because the initial recommendation was not for termination. And Uplift administrators said, no, we don't tolerate any type of physical touching with students by teachers. This is termination. And they did terminate, reported to CPS, reported to SBEC, and contacted the complainant's mother. That is not deliberate indifference under the case law. Flawless investigations or imperfect solutions do not constitute deliberate indifference. These are educators. These are not trained investigators. If they could, could they have done more? Yes, but that is not the question that is asked or answered when you're trying to determine if there's deliberate indifference. Well, counsel, let me ask you about the circumstantial evidence I discussed with opposing counsel. It seems to be evidence of walking the halls by the appropriate person. You can tell me no such appropriate person was ever identified to be walking the halls, but I think there is. They would have walked past this teacher's room. I think the number is perhaps 100 times that he showed movies. You can correct that figure. And the lights would have been off or whatever. Looking at Rosa H, isn't, let me get the terminology right. Is that, isn't that evidence that could go to a fact finder that an appropriate person was aware that this teacher posed a substantial risk of harassing students, sexually abusing, whatever else, because they would have seen the dark room. They would have seen it frequently. They would have seen these barriers. Circumstantial, you don't always get the direct evidence, but such things go to jury, circumstantial cases. What do you say to that? I actually think it's constructive notice, not circumstantial evidence. It's evidence that they walked by and they had to have known. They had to have seen something. That is constructive notice, and I don't think, I would categorize it as constructive notice. But the record is also not that clear, because the record, Mr. Unknown And the evidence I thought was that only he darkened his room when films were shown. I mean, what we're talking about is a substantial, notice of a substantial risk of harm. Not notice that it was seen, but to see the conditions that in which such abuse occurs. I mean, I'm throwing out possibilities and I don't know why it would be constructive notice unless you're saying that it's unclear if one of these appropriate people walked by that they would have looked. But if they did look, the room was dark and there are pictures of these barriers. I don't know what the evidence is about. They could be seen from outside in the hallway, but I think there's you show me there's no evidence of that. Well, perhaps. Well, let me. I think it is really important to note what the actual evidence is. And the evidence is that Mr. Was that is not the only teacher who dark in the classrooms. In fact, other teachers throughout dark in the classrooms for a variety of reasons that all had legitimate. Nobody else showed films and darkened classroom. I think they I think there's I don't think there's any evidence that he was the only one that showed films in the dark and beyond that, what you would have to say is there was a three and a half inch wide window. Mr. Was that at one point actually testified that they wouldn't have even been able to see anything unless they came up to the window and look in. And so there's all kinds of inferences you would have to make. You would have to make the inference that an edu and an appropriate official walked by at the time he had this barrier up or engage in it. You would have to think that he they look towards his classroom. You would have to infer that they could see inside of the classroom without going up to the door and looking in this window. And you would also have to infer that they actually saw. Well, also, what indicates that showing a movie is what you use for sexual abuse? Correct. There's I mean, there are there are multiple reasons sometimes in for kindergarten, you're just trying to keep the kids from going crazy, trying to keep them engaged in life and happy and calm and all of that. And so maybe that's somebody could think that's what he thought. Now, of course, we know what he was doing was completely horrible. But I guess I'm just thinking a teacher could be showing movies to kind of keep the kids engaged. A darkened classroom in and of itself is not indicative of a substantial risk of sexual abuse. Similarly, there were legitimate purposes for privacy folders to be put up in the room because they were there to separate students from exams. They were there to separate students went just so they weren't bothering each other. And because his desk was a kidney shaped desk, sometimes you had students up at the desk actually taking tests or doing stuff at his desk. So even if they had been placed on the desk and students were there, that wouldn't have been unusual. And so it's at most there's circumstantial evidence that if an administrator was walking by at the time and had looked towards the classroom, they may have been able to see a darkened classroom or privacy folders on the desk. But those are not necessarily indicative of substantial risk. But beyond that, it's not just that they had actual knowledge of a substantial risk. They have to have drawn the inference. And there's no evidence whatsoever that they drew the inference that there was a substantial risk of sexual abuse occurring. And in fact, all the evidence in the record indicates that they did not see the appropriate officials that they did not see these conditions. They did not have any awareness of any type of wasn't he like that year? He was so liked and he was he was requested as a teacher by other parents, including people who worked at the school. He was so liked and in his work had been so good. He was been he was made the lead kindergarten teacher for the kindergarten schedule. And we didn't just put evidence of all of this from the appropriate officials in the record. The teacher's aides, the other kindergarten teachers who worked with him in a the other teachers who had classrooms around him all testified they never saw anything unusual about his classroom conditions. They never thought that he darkened his classrooms more than the other when they were. They never saw anything unusual in his classroom. And it's a little scary that this can go on and no one know. I will. I could not believe it because this is not I will tell you, if he hadn't if he hadn't admitted to it, it would be very hard to to believe because I cannot believe that an educator and for an administrator to think an educator would do this in a classroom with 15 to 20 other kindergartners present who would walk down a hall and think with a full classroom of students, even with the lights turned off and even if they were showing an educational video or showing a projection up on the screen, that sexual assault was what was occurring in the classroom. And I think the actual knowledge element is asking not to draw a reasonable inference, but to draw either speculate or draw inference upon inference upon inference to find actual knowledge of a substantial risk of sexual abuse. And even if you did all of that, there's no evidence that they actually drew the inference that it was occurring, which is what has to be shown under the Fifth Circuit in Rosa H. Thank you, counsel. Got anything else for us? On the Section 1983 claim, even though they didn't address it, I think it's very important. The city of Austin, the city of Austin versus city of Pasadena, is a recent decision of this court that shows that the absence of policy in this case simply doesn't cut it. This is a situation where we had Uplift had a policy prohibiting sex discrimination. We had a policy prohibiting sexual abuse. We had a policy providing for reporting mechanisms. We had training that was provided to all employees every year, more than what is required by state law. Don't touch? Yes. So kissing is not allowed? Kissing is not allowed at Uplift. OK. And beyond that, Wazed received training and acknowledged his training every year. And it wasn't just a check the box training. They had to pass a test on the training. And so there's no prior incidents whatsoever to show that Uplift had Uplift's board had any knowledge of the need to add anything to their policy regarding classroom conditions such that they could be deliberately indifferent in not adding it, knowing that it would violate constitutional rights. And also, even if they could show the actual or constructive knowledge and deliberate indifference in a manner that would clearly lead to violations of constitutional rights, which they don't even get close to being there, the absence of the policy was not the moving force, which is more than but for causation of the injury. As this court noted in Doe versus Edgewood ISD, which was an absence of a particular thing in a hiring policy regarding whether you looked at just arrest versus charges, the court said that absence of policy was not the actual cause of this violation. It was Mr. Hernandez's sexual misconduct was the cause, and they did not allow for the policy or absence of policy claim in Doe versus Edgewood. I think it's very important that this actual knowledge standard of before the report is that there is no evidence of actual knowledge. Ms. Walker's knowledge, if she was not an appropriate official, and you cannot infer because she's a mandatory reporter that she actually did make a report. She testified that she did not. She testified she didn't report anything. The evidence shows that every administrator said they never received a report from Ms. Walker. There's no evidence in the record whatsoever. If you inferred that there was a report made because she said, if I saw something, I would have reported something, but I didn't, so there was nothing to report. But if you inferred that, you would erase a lot of Title IX jurisprudence off the books because there's numerous cases where a court dismisses under 12b6 when they don't identify the knowledge of an appropriate official. Thank you. Thank you. Just briefly, Your Honors, to respond to some of the points that my friend has made. First, on the facts. The onus is not on the kindergartners in this case for them to volunteer the nature of their abuse. It's well established in this court's cases that Title IX is sensitive to the institutional setting, to the ages of the victims. Davis acknowledges that schools have a custodial and tutelary power over grade school children. Second, Catherine Savoy, the master's level counselor here who was part of the investigation, did not ask the relevant questions to students. There are age-appropriate ways to ask children whether they have been sexually abused. Nothing even like that happened here. Then, as to the initial reports that were received, I refer the court to ROA 2831, 4588. The complaining student stated that even though she couched it in positive terms, Mr. Wozzeck, quote, would kiss me on the neck all the time when we were good, and that his beard tickled her neck. Even if couched in positive terms, those are alarming statements to hear from a kindergarten student. Then, as to the effects of the abuse, if the court will please consider ROA 55662, where the psychiatrist treating ML reports that she did have herpes simplex that was manifest by unusual oral lesions. And so, certainly, that could have been better treated and entirely treated much earlier had Uplift properly responded to the complaint from the original student. Then, second, on the law, my friend referred to Gebser, Rosa H., and Davis. Gebser held that the, quote, implied damages remedy should be fashioned along the same lines as the regulatory scheme. The regulatory scheme required that a school overcome the effects of the abuse in the appropriate case. That, they looked approvingly at Rosa H., and if you look at Rosa H. from this court, it states that, true, prompt termination or suspension of the offense would ordinarily be sufficient. But Rosa H. says that what is appropriate remedial action will necessarily depend on the particular facts of the case, the severity and persistence of the harassment, and the effectiveness of any remedial steps. So here, if there is a case that is severe and persistent in the nature of the abuse, it is this case. Then if you look at Davis, as I mentioned, Davis acknowledges the court's Title IX sensitivity to the institutional setting, the age of the victim. And then here, as in Roe versus Cypress-Fairbanks, courts consider the totality of the evidence. It wasn't merely that the teacher showed movies, it's the combination of all of these factors. Uplift officials who frequently walk by, they see a frequently dark classroom, they see a structure for which there is no legitimate pedagogical explanation. To separate kindergartners, to prevent distractions, to prevent cheating among kindergartners. And then the after-the-fact response here is characterized as a mere oversight. But as we pointed out, Uplift did not even ask the proper questions about what happened, and they failed to tell any parents at all that that's not an acceptable oversight. But that is deliberate indifference, and a jury could so find. We request that the court reverse and remand for further proceedings. Thank you. Thank you, counsel. Thanks to both of the advocates and the other lawyers at the table for your assistance in the briefing and in the argument. That is the final case before us this week. We are adjourned.